UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JERMAINE EWING,               )
                                  )
         Petitioner,         )
                                    )
         vs.                 )        No. 4:09CV00393 AGF
                                    )
TROY STEELE,              )
                                    )
         Respondent.       )

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se petition of Missouri state prisoner Jermaine Ewing for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted of first-degree assault and armed criminal action arising out of events that occurred on February 1, 2003.  He was sentenced to 20 years of imprisonment on each count, to be served concurrently.

For federal habeas relief, Petitioner asserts that his constitutional rights were violated in the following ways:

Defense counsel was ineffective for failing to (a) call a certain witness (Dr. Amanda Ryden) who would have testified that she heard the victim (Phillip Osby) tell police that Petitioner was not the person who shot him; (b) object to a police officer's testimony that three children told the officer that they heard a "boom" at the time of the crimes, and that Petitioner told them that the sound was a car backfiring; (c) object to allegedly false testimony that Osby had a bullet lodged behind his left ear; (d) object to

the admission of three State's exhibits (photos depicting the blood splatters at the scene of the crimes) as inflammatory; (e) object to the victim's allegedly false testimony that he was shot three times; (f) object to the testimony of a police officer (Anthony Boone) as to a statement made to him by Petitioner ("what is my bond") at the scene of the crimes; (g) question the expertise of the State's expert medical witness; (h) object to the State's medical expert's allegedly false testimony that Osby was shot three times; (i) investigate a defense witness (Antoine Johnson), whom notes indicated was a reluctant witness; and (j) object to the prosecutor's statement during closing argument that Osby was shot "execution-style after being shot in the face twice."

Petitioner, who is African-American, also claims that the trial court erred in denying his *Batson*[1] challenges to the State's peremptory strikes of four African-American venirepersons, and that the prosecutor violated Petitioner's constitutional rights by (a) shifting the burden of proof onto Petitioner by telling the jury in opening statement that Osby was shot three times; (b) knowingly presenting false testimony through the State's medical expert that Osby was shot three times; (c) withholding evidence that Petitioner was released from custody ten hours after a negative identification process at a hospital (due to the identification being negative); (d) mischaracterizing, in front of the

---

[1]   *Batson v. Kentucky*, 476 U.S. 79 (1986).

jury and at sentencing, Petitioner's prior conviction for statutory rape as a conviction for forcible rape.[2]

Respondent argues that federal habeas relief must be denied because many of Petitioner's claims were procedurally defaulted and the state court's adjudication of the remaining claims was not unreasonable.  For the reasons set forth below, habeas relief shall be denied.

## BACKGROUND

### Voir Dire and Trial

The venirepanel consisted of 48 individuals, 15 of whom were African-Americans. During voir dire, defense counsel raised a *Batson* challenge with regard to four of the African-American venirepersons.  The prosecutor explained that three of these individuals (venirepersons Pendleton, Stith-Rutlin, Elliott) were stricken because they had incarcerated relatives, and that the fourth individual (venireperson Coffey) was stricken because she was ambivalent about the police investigation of her vandalized car and had served on a jury that did not reach a verdict.  In each instance, defense counsel objected that the reasons proffered by the prosecutor were "merely pretextual" but failed to present any evidence in support of the claim of pretext.  In each instance, the trial court found that the State had articulated race-neutral reasons sufficient to sustain the strikes.

---

[2]     The Court's numbering of the Petitioner's claims does not correspond to the numbering in the habeas petition.

The Missouri Court of Appeals summarized the evidence presented at trial as follows, and this Court's review of the trial transcript confirms that the summary is fair and accurate.

Philip Osby (Osby) testified that he arrived at 3901 Evans, the home of his estranged wife Zabrina Dunn (Dunn) and her three children, around 9:00 a.m. on February 1, 2003. Osby went there to take birthday money to Dunn's daughter Destiny, to whom Osby had shown fatherly affection since her birth. Osby had called Dunn prior to his arrival to inform her of his visit.

Upon arrival, Osby parked his truck, walked to the residence's door and knocked. He saw [Petitioner], whom Osby had known all his life, looking through the blinds. Osby noticed he had left the money in his truck, so he returned to the truck to retrieve it. As Osby again walked toward the residence, he saw [Petitioner] in the doorway. [Petitioner] pointed a revolver as Osby and fired. Osby testified that he froze as [Petitioner] shot him in the mouth. Osby testified that he fell as he turned to run away, and that [Petitioner] kept shooting at him. After about two or three minutes, Osby got up and stumbled to his truck, and drove erratically for a short distance en route to a hospital, when he saw a police officer. Osby parked his truck and told the officer that he had been shot. Osby was taken to the hospital. Later, when police officers arrived at the hospital with [Petitioner], Osby identified [Petitioner] as his shooter. During cross-examination at trial, Osby stated that he had no doubt that [Petitioner] was the person who shot him because he saw [Petitioner] with the gun; Osby said he was 100 percent sure his assailant was [Petitioner].

Officer Michael Betz (Betz) of the St. Louis City Metropolitan Police Department testified that he responded to the scene where Osby had parked his truck, and that Osby was difficult to understand because his mouth was bleeding. Betz testified that Osby was disoriented and that it took Osby time to recall what happened. Osby informed Betz "that a subject by the name of Jermaine or Endo had shot him up at the corner of Evans and Vandeventer, 3901 Evans."

Sergeant Anthony Boone (Boone) of the St. Louis City Metropolitan Police Department went to 3901 Evans with several other police officers after the shooting. He testified that Osby told them [Petitioner's] name, Jermaine,

and the alleged nickname, Endo.  When he knocked, [Petitioner] opened the door of the residence.  Boone testified that an officer asked [Petitioner] if his name was Jermaine, and [Petitioner] replied, "Yeah, what's my bond?"  The officers arrested [Petitioner] and secured the rest of the house.  Boone testified that they did this because:

> [the officers] had just received information from the victim that he had been shot in the face from that location, just within probably a matter of probably, you know, maybe minutes, so for officers' safety we're going to secure the rest of the residence, and with his statements and matching the description of what the victim gave us he was taken into custody.

The officers searched the house for the weapon, but they found none. Boone also testified regarding Dunn's children in the house:

> . . . three of the children were located in the back bedroom near the basement steps.  They said they had heard some, I guess, arguing and then heard boom, and then they seen the defendant run through the -- like the little kitchen area down the basement steps and asked what was wrong, he said nothing, it was the car backfiring.

Betz testified that after being contacted by Osby, he followed the ambulance transporting Osby to the hospital.  Betz was present in the hospital room when some officers brought in a suspect identified as Jermaine or Endo, and asked Osby if he could identify him.  Betz said, "He did, and without hesitation he identified him as the person who shot him."

[Petitioner] also testified at trial.  He said that Osby was banging on the door, but his girlfriend Dunn asked him not to answer it.  He went to the basement to do laundry. [Petitioner] testified that although he did not hear gunshots, he heard Dunn and her brother say they heard gunshots, so he came upstairs again.  When they went to the living room and looked out the window, [Petitioner] saw Osby getting up from the ground. [Petitioner] said he did not shoot Osby, and he did not see anyone shoot Osby.  He saw Osby drive away, and then went back downstairs to do laundry.

[Petitioner] testified that police officers later knocked on the door.  He looked out the window and the police officers told him to open the door. [Petitioner] opened the door, and the officers told him to get on his knees and

put his hands behind his head.  The officers searched the house, and "another officer was standing at the door, he began -- he asked me what was my name. I told him my name was Jermaine.  He then asked me, you know, had I shot anybody, I told him like no, I didn't shoot anybody." [Petitioner] testified that he did not ask the officer how much was his bond. The police officers handcuffed [Petitioner] and took him to the hospital.

In the hospital room with Osby, [Petitioner] said he could not understand what one of the police officers, Elizabeth Powell (Powell) asked Osby when she leaned toward Osby.   Osby looked at [Petitioner] and mumbled something that [Petitioner] could not understand. Powell said "bring him closer, he can't see him."   The other officers brought [Petitioner] closer, and again, Powell said something to Osby that he could not understand. [Petitioner] testified, "And then he looked at me for a few second longer than he did the first time, and at that time he, I guess, he mumbled something else, he said to me -- it sound like he said 'that's not him.'"  Powell "got kind of loud" then and said, "he can't see him, bring him closer."  The police officers brought [Petitioner] closer to the bed.  [Petitioner] testified, "And then he looked at me for a little while longer, and he kind of put his head down, shook his head like he was saying no."

\*     \*     \*

Resp. Ex. K.

To the above, the court adds that at the start of Petitioner's testimony, defense counsel asked Petitioner whether he had prior convictions for forcible rape and first-degree robbery to which Petitioner replied in the affirmative.  On cross-examination, the prosecutor clarified that the rape conviction involved a child under 14 years old.  At sentencing, the prosecutor told the trial court that Petitioner had prior convictions for first-degree robbery and forcible rape.

## Direct Appeal

On direct appeal the only claim raised by Petitioner was that the trial court erred in overruling defense counsel's four *Batson* objections noted above.  Petitioner argued that there were two white venirepersons who were similarly situated to the African-American venirepersons who were stricken.  The appellate court held that Petitioner did not preserve his claim of error because he failed to assert at trial that similarly situated white venirepersons were not stricken and failed to show at trial that the prosecutor's proffered reasons were pretextual and racially motivated.  The appellate court further stated that even if the error had been preserved, Petitioner's arguments as to pretext were not persuasive because the two white venirepersons identified by Petitioner were in fact not similarly situated to the African-American venirepersons in question.

## Postconviction Proceedings

Petitioner's motion for post-conviction relief was denied without an evidentiary hearing.  On appeal from this denial, Petitioner reasserted the four points he had presented to the motion court, three of which are relevant here: that defense counsel was ineffective for (1) failing to locate, interview, and call as a witness Dr. Amanda Ryden, who would have testified that at the hospital, Osby told police that Petitioner was not the person who shot him; (2) failing to object to Boone's testimony that Petitioner told Dunn's children that the boom they heard was a car backfiring; and (3) for characterizing Petitioner's prior conviction for statutory rape as a conviction for forcible rape.

The Missouri Court of Appeals denied all claims. The court reasoned that even if defense counsel had called Dr. Ryden and her anticipated testimony had been admitted as non-hearsay, there was no reasonable probability that the result of the trial would have been different.  The appellate court reasoned that Dr. Ryden's testimony would not have weakened the prosecution's case as both Osby and Betz testified that Osby identified Petitioner at the hospital as the shooter, and Betz and Boone testified that prior to Osby's hospitalization Osby identified Petitioner as the shooter.

The court rejected Petitioner's claim regarding his statement to Dunn's children that the boom they heard was a car backfiring on the grounds that the testimony was not prejudicial in light of the overwhelming evidence of guilt.

Lastly, the state appellate court found Petitioner's claim of ineffective assistance of counsel based on counsel characterizing one of Petitioner's prior convictions as forcible rape to be without merit.  The court noted that the Petitioner himself testified that he had been convicted of forcible rape.  The court further stated that, under Missouri state law, a person can forcibly rape one who is under 14 years of age.  Additionally, according to the state appellate court, the record contained overwhelming evidence of Petitioner's guilt, the exact nature of Petitioner's prior conviction was clarified at trial, and neither the jury nor the judge were misled by use of the term forcible rape.

## DISCUSSION

**Procedural Default**

Respondent argues that several of Petitioner's claims were procedurally defaulted because, although they were raised in his pro se post-conviction motion, they were not included in his amended motion prepared with the assistance of appointed counsel. Under the doctrine of procedural default, "a federal [habeas] court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, ___ U.S. ___, 2012 WL 912950, at *6 (Mar. 20, 2012).  An exception to this rule is that "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law." *Id.*[3]  Attorney error on the part of post-conviction counsel at the initial-review stage may qualify as cause for a procedural default. *Id.* at 7.  In light of *Martinez*, this Court will err on the side of caution, and review the merits of the claims that were included in Petitioner's pro se motion.

---

[3]   The Court can also reach the merits of Petitioner's claims if he can show that he is "probably actually innocent" of the crimes for which he was convicted, by proving his allegations of constitutional error "with new reliable evidence . . . that was not presented at trial," and establishing "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Bowman v. Gammon*, 85 F.3d 1339, 1346 (8th Cir. 1996) (citing *Schlup v. Delo*, 513 U.S. 298 (1995)).  Petitioner fails to make this showing.

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996,

> Federal habeas relief may not be granted for claims subject to §
> 2254(d) unless it is shown that the earlier state court's decision "was
> contrary to" federal law then clearly established in the holdings of
> this Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412
> (2000); or that it "involved an unreasonable application of" such
> law, § 2254(d)(1); or that it "was based on an unreasonable
> determination of the facts" in light of the record before the state
> court, § 2254(d)(2).

*Harrington v. Richter*, 131 S. Ct. 770, 785 (2011).

"For purposes of § 2254(d)(1), 'an unreasonable application of federal law is

different from an incorrect application of federal law.'" *Id.* (emphasis omitted) (quoting

*Williams*, 529 U.S. at 410). "A state court's determination that a claim lacks merit

precludes federal habeas relief so long as "fairminded jurists could disagree" on the

correctness of the state court's decision." *Id.* at 786 (quoting *Yarborough v. Alvarado*,

541 U.S. 652, 664 (2004)); *see also Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (AEDPA

"imposes a highly deferential standard for evaluating state-court rulings and demands that

state-court decisions be given the benefit of the doubt.") (citation omitted).

**Batson Claims**

Petitioner argues that his constitutional rights were violated by the trial court's

error in overruling his *Batson* challenges to the state's exclusion of four

African-American venirepersons. "*Batson* established that 'the Equal Protection Clause

forbids the prosecutor to challenge potential jurors solely on account of their race.'"

*Stenhouse v. Hobbs*, 631 F.3d 888, 891 (8th Cir. 2011) (quoting *Batson*, 476 U.S. at 89). The Supreme Court has adopted a three-part test to determine whether a peremptory strike violates the constitution. First, the petitioner must establish a prima facie case showing that the prosecutor racially discriminated in exercising one or more peremptory challenges. Second, if the petitioner makes a prima facie showing, the State must offer a racially neutral explanation for the challenges. The State's explanation need not justify a challenge for cause, or be persuasive, or even plausible. Third, the trial court must decide whether the petitioner has established purposeful discrimination. *Rice v. Collins*, 546 U.S. 333, 338 (2006) (citing *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995) (per curiam)).

"[A] federal habeas court can only grant [the] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge. State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' § 2254(e)(1)." *Rice*, 546 U.S. at 338-39; *see also Cole v. Roper*, 623 F.3d 1183, 1188-89 (8th Cir. 2010).

Here, Petitioner made no showing at trial that the prosecutor's proffered reasons were not race-neutral. And there is nothing to suggest that the trial court's factual determination that the strikes were not race-based was incorrect. The Court of Appeals properly determined that the two white venirepersons Petitioner asserted, on appeal, were similarly situated, were not, in fact similar. Thus, based on its review of the record, this Court cannot say that the decision of the Missouri Court of Appeals on this matter was in any way unreasonable, factually or legally. *See Bell-Bey v. Roper*, 499 F.3d 752, 757-58

- 11 -

(8th Cir. 2007) (holding that the state trial court did not unreasonably apply clearly established law in listening to the prosecutor's rationale for using a peremptory strike, and overruling the petitioner's *Batson* challenge, as nothing in the record suggested that the trial court failed to properly assess whether the reason offered by the state was a valid race-neutral reason).

## Claims of Ineffective Assistance of Counsel

"The right to the effective assistance of counsel at trial is a bedrock principle in our justice system." *Martinez*, 2012 WL 912950, at *8. To succeed on a claim of ineffective assistance of defense counsel, a habeas petitioner must establish both "that counsel's representation fell below an objective standard of reasonableness," and that but for counsel's deficiency there is "a reasonable probability" that the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 94 (1984).

Error by counsel, even if professionally unreasonable, does not necessarily require that a judgment be set aside. *Id.* at 691. A defendant must affirmatively show prejudice by showing that but for counsel's error, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 694. Moreover, in the context of a § 2254 petition, a petitioner

> "[m]ust do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner."

*Underdahl v. Carlson*, 381 F.3d 740, 742 (8th Cir. 2004) (quoting *Bell v. Cone*, 535 U.S. 685, 698-99 (2002)).  Furthermore, the Eighth Circuit has held that "a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test."  *Hall v. Luebbers*, 296 F.3d 685, 692-3 (8th Cir. 2002); *see also Kennedy v. Kemna*, 666 F.3d 472, 485 (8th Cir. 2012).

From review of the record, the Court cannot say that the state appellate court misapplied federal law or misconstrued the facts of the case in concluding that the result of the trial would not have been different had defense counsel called Dr. Ryden to testify.  Similarly, the Court concludes that the state appellate court reasonably found that the references at trial and sentencing to Petitioner having been convicted of forcible rape were not prejudicial.  As the state court noted, the prosecutor clarified at trial that this prior conviction was for statutory rape, and, given the overwhelming evidence of Petitioner's guilt, the jury would not have reached a different conclusion absent use of the term forcible rape instead of statutory rape.

The Court rejects Petitioner's claim that counsel was ineffective for failing to object to the admission of photos depicting the blood splatters at the scene of the crime.[4] *See Perkins v. Dwyer*, No. 4:05CV00403 ERW (TIA), 2008 WL 686328, at *7 (E.D. Mo. Mar. 10, 2008) (rejecting habeas claim that counsel was ineffective for failing to object to

---

[4]     The photos at issue, Exhibits 5, 6, and 7, are not in the record before the Court. They are described in Respondent's Response to the Order to Show Cause, without any correction by Petitioner, as showing the blood splatters in greater detail than Exhibit 4, another photo that was also admitted into evidence.

the admission of photos of the assault victim taken immediately after she was released

from the hospital) (citing *Rousan v. Roper*, 436 F.3d 951, 959 (8th Cir. 2006) (holding

that the introduction of seven photographs of the two victims' severely decomposed

bodies were probative and did not constitute a due process violation)).

Petitioner does not explain in his habeas petition, nor did he explain in his pro se

motion for post-conviction relief, how defense counsel was ineffective in calling Johnson

as a witness.  The Court's review of the trial transcript does not reveal any evidence of

deficient performance by counsel or prejudice to Petitioner in this regard.

This Court also rejects Petitioner's remaining claims of ineffective assistance of

counsel that were included in his pro se motion for post-conviction relief but not included

in his amended motion, and therefore not adjudicated by the state courts.  Although the

Court will not address each and every one of the arguments, counsel's failure to object to

such matters as testimony that Osby was shot three times, or had a bullet lodged behind

his left ear, was not objectively unreasonable.  Nor can the Court find that Petitioner was

prejudiced by such evidence, in light of the strong evidence of Petitioner's guilt.  Nor was

counsel ineffective for failing to object to Officer Boone's statements acknowledging his

name was Jermaine, and asking "What is my bond."  This evidence met the standard for

relevance, and as statements of the Petitioner, were not hearsay.  The Court also agrees

with the state appellate court that counsel's failure to object to the Officer's testimony

that the children said that Petitioner said the boom was a car backfiring, does not

constitute ineffective assistance of counsel.  Even if the statements were "testimonial"

- 14 -

within the meaning of *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), Petitioner

was not prejudiced by this testimony.  Indeed, in many respects, it appears to be

consistent with Petitioner's own trial testimony.  Any confrontation clause violation was

harmless beyond a reasonable doubt, in light of the overwhelming evidence of guilt.  *See*

*United States v. Holmes*, 620 F.3d 836, 844 (8th Cir. 2010) (holding that an unwaived

violation of the confrontation clause is reviewed for harmless error).

**<u>Claims of Prosecutorial Misconduct</u>**

In reviewing a prosecutor's challenged statements, "[t]he relevant question is

whether the comments so infected the trial with unfairness as to make the resulting

conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 169 (1986)

(quoted case omitted).  A prosecutor's challenged statement must be viewed in the

context of the entire trial.  *Culkin v. Purkett*, 45 F.3d 1229, 1235 (8th Cir. 1995).  A

habeas petitioner must show that there is a reasonable probability that the error

complained of affected the outcome of the trial – i.e., that absent the alleged impropriety,

the verdict probably would have been different.  *Kellogg v. Skon*, 176 F.3d 447, 451 (8th

Cir. 1999).

Those claims of prosecutorial misconduct raised by Petitioner that involve

statements by the prosecutor that Osby was shot three times are without merit.  The

Court's review of the record shows that there was sufficient evidentiary support for these

statements, even if it was not conclusively established that Osby was shot three times.  In

any event, the challenged statements did not deprive Petitioner of a fair trial.

As noted above, Petitioner also asserts that the prosecutor withheld evidence that Petitioner was released from custody ten hours after the identification process at the hospital due to the identification being negative.  Clearly, this does not constitute undisclosed evidence as Petitioner was equally aware of this fact and testified to the same at trial.

Lastly, the state court's adjudication of Petitioner's claim that the prosecutor improperly mischaracterized Petitioner's prior conviction for statutory rape as a conviction for forcible rape fails for the same reasons that the related claim of ineffective assistance of counsel failed.  The prosecutor's reference at sentencing to forcible rape as one of Petitioner's prior convictions, although arguably incorrect, was not prejudicial.

### CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2).  *See Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Jermaine Ewing for a writ of habeas corpus is **DENIED**.

- 16 -

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2012.